WEST KENTUCKY COAL CO. v. J. T. MORGAN LUMBER CO.

(Circuit Court of Appeals, Sixth Circuit. May 2, 1911.)

No. 2,087.

TOWAGE (§ 12*)—INJURY TO TOW—FAULT OF OWNER OF TOW.

The master of a towing tug is under no such absolute duty to follow his own judgment as to the management of the tow that he may not yield his judgment on the express demand of the owner of the tow, where neither life nor the property of others is imperiled; and where he does

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

so, and injury to the tow results, the owner is estopped to charge the tug with fault.

[Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 24-26, 29; Dec. Dig. § 12.*]

Appeal from the District Court of the United States for the Western District of Kentucky.

Suit in admiralty by the J. T. Morgan Lumber Company against the West Kentucky Coal Company. Decree for libelant for half damages, and respondent appeals. Reversed.

For opinion below, see 181 Fed. 271.

Wheeler & Hughes, for appellant.

Bagby & Martin and Campbell & Campbell, for appellee.

Before SEVERENS and KNAPPEN, Circuit Judges, and SATER, District Judge.

SEVERENS, Circuit Judge. This is a suit in admiralty brought by the filing of a libel by the lumber company against the respondent, the coal company in personam. It was a suit to recover damages arising from the alleged negligence of the coal company in performing a contract for towage of a raft of logs from Paducah, Ky., across the Ohio river to Brookport, on the opposite side of the Ohio in Illinois, where the libelant had mills for the sawing of logs into lumber. The raft of logs was moored at the bank a little way up the Tennessee river, which falls into the Ohio at Paducah. From heavy rains the Tennessee river was flooded, and the water rose to such a height as to endanger the logs where they were moored. The libelant thereupon hired the respondent to take its steamer Harth, which it was using for navigating the rivers in that locality, to tow the raft across the Ohio to its mills on the Illinois side, where, the water being not so high, it was supposed by the libelant the logs could be safely secured. The respondent undertook to make the towage with the Harth at the price of $2.50 per hour for the time employed. The steamer had its own crew and started out with the tow to go across. In the Ohio river between Paducah and Brookport there is a long island running up and down the stream, and the question first to be disposed of was how the raft should be handled by the steamer. The respondent was of the opinion that the best way was to put the raft in front and the steamer behind it, and go up the river and around the eastern end of the island, instead of going down the Kentucky side of the Ohio, where the water was in a more turbulent condition, and presented more danger, and going thence around the western end of the island to Brookport. There was a heavy wind blowing from the Illinois shore, and the Harth encountered difficulty in these conditions in pushing the raft before her up the stream, and thereupon the respondent brought another vessel and the two together, pushing the raft, managed to take it safely around the eastern end of the island. On going around, and when approaching the Illinois shore, it appeared, or seemed to the captains of the steamers, to be a difficult and dangerous undertaking to attempt to take the raft down to Brookport and secure it there. Accordingly the two captains united in informing the president of the libelant,

who was on the Harth and accompanied the tow, that, as the wind was blowing hard from the Illinois shore, and it was late in the day, it would not be safe on that day to attempt to make a landing at Brookport, and that it would be better and safer to put the raft into the "Pocket," as it was called, on the Illinois shore, a place above and sheltered by a row of piles which had been driven out from the Illinois shore into the river for the purposes of a railroad which had a ferry across the Ohio river at that point, and the captains urged that the raft would be safe up there in the "Pocket," and insisted that this course should be pursued. The president of the libelant refused to agree to this, and, stating that he would take the responsibility, directed the landing to be made at Brookport on that day, saying hat he would get aboard the libelant's gasoline launch, which was then approaching from Brookport, and would go ahead and make all necessary arrangements for cables and ropes, of which he declared there was an abundant supply at libelant's mills at Brookport. The president of the libelant then left with the launch and went to Brookport to get cables and ropes. The captains of the steamers yielded to these directions of the president and attempted to land the tow at Brookport, but they were unable to do so on account of the heavy wind. They got near enough to extend the long ropes to the raft which the libelant brought out for that purpose, but, on being attached, it was found that the ropes were made of wire and were not elastic, as ropes ordinarily used for such purposes are, and the ropes would not "give," but pulled the raft apart, and a large proportion of the logs were carried down the river and lost. The libelant, at considerable expense and by the use of other boats and men, secured many of the logs which had escaped. The suit was brought to recover the value of the logs lost and the expense of recovering those saved.

It does not appear that there was any negligence on the part of the respondent, unless it be that it did not exercise reasonable judgment in going up the river and around the eastern end of the island, or else—and this is the gravamen of the plaintiff's case as it now stands —that it was negligent in taking the logs down to Brookport, instead of putting them in the "Pocket," as good judgment would indicate would be much the safer course, and where it is likely the raft could have been preserved. The contract being one for towage merely, the respondent was not an insurer, but was responsible for the exercise of reasonable care in the execution of the duty it undertook. The judge made a finding of facts upon the evidence adduced, which is in substance embodied in the finding, and the statement of his conclusions of law. With regard to the negligence imputed to the respondent in not taking the raft downstream and around the western end of the island, the court canvassed the evidence and the arguments of counsel, but could not or did not, find that the negligence of defendant, alleged on that score, was made out. The court seems to have thought it unimportant, in view of its conclusion upon the other point. We find no sufficient ground for charging the respondent with fault in making the choice to take the raft around the eastern end of the island. The master of the Harth was a man of long experience in his calling, and he says, in giving testimony, that

he took what he thought was the safest course. The reasons adduced for a contrary conclusion do not impress us with conviction that he failed to exercise a reasonable degree of skill and judgment.

But upon the question whether the respondent was at fault in taking the tow down to Brookport and attempting to land it there the court took the view that both parties were at fault—the libelant, in requiring the raft to be taken to Brookport that day, instead of taking it into the "Pocket" until the storm abated, and supplying ropes at Brookport which were not suitable for the use intended; and the respondent, in not disregarding the requirement of the president of the libelant and in not taking the raft to the place indicated by it for shelter overnight. Upon these findings it was held that the damages should be divided, and a decree to that effect was entered. In this we think the court erred. The taking the raft to Brookport after rounding the east end of the island was against the judgment and choice of the respondent, and was done only upon the express requirement of the president of the libelant, and the assumption of all liability for the consequences; and his authority is not disputed. The respondent ought not to be charged with the consequences of the mistakes made upon the demand of the libelant, or the fault of not providing proper cables for landing the raft at Brookport, as the respondent had reason to expect from the assurance of the libelant's president. The conditions upon which a court of admiralty divides the damages between two parties, both of whom are at fault, did not exist. The libelant was estopped by its own act from claiming that it be a fault of the respondent which was done upon its demand. We know of no rule of admiralty law which precludes the application of this general and fundamental rule governing the conduct of contracting parties. If there was a departure from the mode of execution of the contract as originally made (a thing which is not at all obvious), it was but a substitution of another mode of executing it. It cannot be doubted that such a substitution may be made upon the agreement or consent of the parties.

The court seems to have assumed that the master of the steamer, from the control which he possesses over the management of the tow, is bound to exercise it according to his own judgment, and is not to be swerved from that duty even by the demand of the owner. There may be cases where this right of the master should be admitted and enforced, as when the lives or safety of other parties or their property, to whom the master owes a duty, are concerned, and which could not otherwise be protected. But this was not such a case. The court in its opinion refers to the case of Transportation Line v. Hope, 95 U. S. 297; 24 L. Ed. 477, as if it supported the application to this case of the rule respecting the absolute duty of the master. But we are unable to see how such an inference can be drawn from that case. In our view, the faults complained of by the libelant are subject to the maxim, "Volenti non fit injuria," and that the libel ought to have been dismissed.

The decree of the District Court must be reversed, and the libel dismissed. The appellant is entitled to recover costs in this court, as well as in the court below.